IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| RHONDA MEISNER, | ) | C/A No. 3:12-cv-00684-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| ZYMOGENETICS, INC., a wholly owned | ) | |
| subsidiary of Bristol-Myers Squibb, | ) | |
| ZYMOGENETICS, LLC, a wholly owned | ) | |
| subsidiary of Zymogenetics, Inc., and | ) | |
| TRACEY CALDERAZZO, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Through this action, Plaintiff Rhonda Meisner ("Meisner") seeks recovery from her former

employer, ZymoGenetics, LLC, and a related entity, ZymoGenetics, Inc., (collectively

(ZymoGenetics"), for alleged discrimination in employment in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), retaliation in violation of Title VII, and,

arguably, discrimination in violation of the Age Discrimination in Employment Act of 1967

("ADEA").[1] Meisner also asserts a state law claim against ZymoGenetics under the South Carolina

Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.* ("SCPWA"). Finally, Meisner asserts

a slander claim against a co-worker, Tracey Calderazzo ("Calderazzo").[2]

---

[1] Meisner's amended complaint relies solely on Title VII in alleging discrimination based on gender, religion and age. Because age is not a protected class under Title VII, the court treats Meisner's age discrimination allegations as seeking relief under the ADEA

[2] This Defendant's name is spelled "Calderazzo" in the caption of the amended complaint, ECF No. 30, and has never been formally modified. The court, therefore, utilizes that spelling in the caption of this order. However, as documents filed by Defendants, including emails bearing this Defendant's signature block spell the name "Caldarazzo," the court utilizes that spelling in the remainder of the order. *See, e.g.*, ECF Nos. 216-22 (Caldarazzo email); ECF No. 277 (Defendants' Response to Plaintiff's Objections to Report and Recommendation of the Magistrate Judge).

The matter is before the court on (1) Meisner's appeal of orders denying her motion to amend the complaint (ECF No. 260), (2) the parties' cross-motions for summary judgment (ECF Nos. 134, 216), and (3) a variety of related and peripheral motions. For reasons set forth below, the court resolves the appeal and pending motions as follows:

(1)    The orders denying Meisner's motions to amend the complaint (ECF No. 199) and reconsider that denial (ECF No. 256), challenged by Meisner's appeal (ECF No. 260), are affirmed;

(2)    Meisner's motion for summary judgment (ECF No. 134) is denied;

(3)    Defendants' motion for summary judgment (ECF No. 216) is granted;

(4)    Meisner's motion to amend the docket text order entered as ECF No. 269 (ECF No. 275) is deemed a supplemental objection and is considered as such;

(5)    Meisner's motion for leave to file a reply in support of her appeal ( ECF No. 276) is granted and the attached memorandum is considered;

(6)    Meisner's motion to amend or correct her sur reply in opposition to Defendants' motion for summary judgment (ECF No. 252) is also granted and the attachment is considered; and

(7)    Meisner's earlier motions in limine (ECF Nos. 204, 219) are terminated as moot in light of the summary judgment rulings.

The court has previously granted another motion to file an additional memorandum and has considered the additional filing. ECF No. 281 (motion); ECF No. 282 (order granting with limitations); ECF No. 285 (reply in support of objection).

## PROCEDURAL BACKGROUND

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(g), D.S.C., this matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial proceedings and a Report and Recommendation ("Report"). On November 21, 2013, the Magistrate Judge issued an Order denying Meisner's motion to amend the amended complaint. ECF No. 199. Meisner sought

2

reconsideration of that denial, which was denied by order entered July 30, 2014. ECF No. 256. On the same day, the Magistrate Judge issued a Report recommending that Meisner's motion for summary judgment on her SCPWA claim be denied and Defendants' motion for summary judgment as to all claims be granted in full. ECF No. 257 (Report). The Report also recommended that certain documents be unsealed and that two other motions be terminated (ECF Nos. 204, 219 (motions in limine)).[3] The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so.

Meisner appealed the denial of her motion to amend on August 13, 2014. ECF No. 260. She also filed timely objections to the Report on August 25, 2014, arguing that the Report erred in recommending the court deny Meisner's motion for summary judgment and grant Defendants' motion for summary judgment. ECF No. 265; *see also* ECF Nos. 261, 262 (motion seeking and order granting an extension of the objection deadline).[4] Meisner has subsequently filed several motions and supplemental memoranda which have been fully considered along with Defendants' opposition memoranda.[5]

---

[3] The recommendation as to unsealing was adopted by separate docket text order as there was no objection to this recommendation. ECF No. 266. By later orders, the court directed that other documents previously submitted for *in camera* review be filed in the public record. ECF Nos. 271, 278.

[4] The objections do not address Meisner's allegations of age discrimination. Thus, Meisner does not challenge the recommendation that summary judgment be granted to the extent any claim is asserted under the ADEA.

[5] The Magistrate Judge corrected one misstatement of fact in the Report by docket text order entered after Meisner filed her objections. *See* ECF No. 269 (correcting misstatement of the dates Meisner was terminated and the termination became effective and noting that "[t]his typographical error in the background section does not alter the court's analysis (which correctly relied on the 2010 dates) or the court's recommendation with regard to any of Plaintiff's claims[.]"). One of Meisner's subsequent filings seeks amendment of this docket text order. ECF No. 275. The court has construed this filing as a supplemental objection because it seeks to correct what Meisner perceives as errors in the underlying Report, rather than errors in the docket text order.

## DISCUSSION

### I.     APPEAL OF DENIAL OF MOTION TO AMEND

The court first addresses Meisner's appeal (ECF No. 260) of the Magistrate Judge's order (ECF No. 199) denying Meisner's motion to amend the amended complaint (ECF No. 172) ("Motion to Amend"). Because the Magistrate Judge also denied Meisner's motion to reconsider the order denying Meisner's Motion to Amend (ECF No. 205) ("Motion to Reconsider"), the court treats this appeal as also challenging the docket text order (ECF No. 256) that denied the Motion to Reconsider. For the reasons set forth below, this court affirms the orders denying both Meisner's Motion to Amend and her Motion to Reconsider.

#### A.     Standard

Pursuant to 28 U.S.C. § 636(b)(1)(A), a Magistrate Judge is authorized to "hear and determine any pretrial matter" other than eight specifically excluded motions. The Magistrate Judge's ruling on such a matter must be sustained unless it is "clearly erroneous or is contrary to law." *Id.*; *see also* Fed. R. Civ. P. 72(a) (addressing standard of review for "Nondispositive Matters"). The eight excluded motions may still be referred to a Magistrate Judge, but must be addressed by proposed findings and recommendations, which are subject to *de novo* review to the extent objection is made. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

Motions to amend pleadings are not among those excluded from 28 U.S.C. § 636(b)(1)(A). Motions to dismiss for failure to state a claim on which relief can be granted are excluded. This raises the question whether a motion to amend which is denied based on futility should be treated as a motion to dismiss for failure to state a claim and subjected to *de novo* review. The appellate courts which have addressed this issue have concluded that it should not. *See Hall v. Norfolk*

4

*Southern Ry. Col*, 469 F.3d 590, 595 (7th Cir. 2006) (rejecting reasoning in various district court

opinions that would treat such a ruling as dispositive under 28 U.S.C. § 636(b)(1)); *Maurice v. State*

*Farm Mut. Auto. Ins. Co.*, 235 F.3d 7, 9 n. 2 (1st Cir. 2000) (holding that "magistrate judge had the

authority to decide the motion to amend . . . outright").

The court need not resolve this debate because the relevant standards are effectively the same

where, as here, the decision turns on an issue of law. If the ruling as to the legal issue is correct, it

is not "clearly erroneous or . . . contrary to law" under 28 U.S.C. § 636(b)(1)(A) and Rule 72(a).

Neither is it erroneous under a *de novo* standard of review pursuant to 28 U.S.C. § 636(b)(1)(B) and

Rule 72(b). *See*, *e.g.*, *Haines v. Liggett Group Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) ("[T]he phrase

'contrary to law' indicates plenary review as to matters of law.").

**B.    Background**

**Filing of Action and Scheduling Orders.** This matter was filed on March 8, 2012. The

first scheduling order was entered on May 9, 2012, and set a discovery deadline of November 27,

2012. ECF No. 12. Multiple amended scheduling orders followed. ECF No. 15 (entered June 27,

2012); ECF No. 28 (entered February 15, 2013); ECF No. 76 (entered May 30, 2013). The third (and

final) amended scheduling order was entered on May 30, 2013, and set a discovery deadline of

October 30, 2013. ECF No. 76.

**Motion to Amend.** The Motion to Amend that is the subject of this appeal is Meisner's third

motion to amend the complaint.[6] It was filed on October 23, 2013, seven days before expiration of

---

[6] Meisner first sought leave to file an amended complaint in July 2012. ECF Nos. 17, 19. This motion was granted over Defendants' objection in February 2013. ECF Nos. 29, 30. Meisner again sought leave to amend her complaint in August 2013, which motion Defendants also opposed and the Magistrate Judge denied after oral argument. ECF Nos. 117, 119, 121. The Motion to Amend that is the subject of Meisner's appeal is, therefore, her third motion to amend the complaint.

the discovery deadline set by the third amended scheduling order.  Through this motion, Meisner

sought to add slander and libel claims based on an allegedly false report Tracey Caldarazzo made

regarding complaints she received from Claus Brandigi, M.D. ("Dr. Brandigi").  ECF No. 172 at 2.

Defendants opposed the Motion to Amend on multiple grounds including, most critically,

futility.  The futility argument rested, in part, on the applicable two-year statute of limitations.  ECF

No. 184.  Defendants noted that the proposed slander and libel claims were based on a January 2010

report, thus the challenged utterance occurred more than three years before the motion to amend was

filed.[7]  *Id.* at 2-3, 5-7.  Defendants also argued the proposed claims were futile because the alleged

statements were privileged and the motion was untimely because Meisner failed to show good cause

for the delay in filing her Motion to Amend.  *Id.* at 8-12.  The last argument noted that the motion

was filed fourteen months after the deadline for moving to amend the pleadings and one week before

the close of discovery.  *Id.* at 8-9.[8]  Defendants also noted that Meisner had documentary evidence

of the alleged defamatory statements no later than November 2012, though they acknowledged Dr.

Brandigi's deposition, on which Meisner relied for the falsity of the reported complaint, predated the

Motion to Amend by only one month.

_____

[7]  Defendants did not address the potential relation back of these allegations to the filing of
the original complaint.  Relation back would not, however, aid Plaintiff as the original complaint was
filed in March 2012, more than two years after the alleged defamatory statement was made in
January 2010.  *See* ECF No. 273 at 4 n.2 (addressing possibility of relation back in memorandum
in opposition to Meisner's appeal).

[8]  Of the four scheduling orders, only the first two included a deadline for motions to amend
pleadings, and both set that deadline as August 7, 2012.  The third scheduling order (second
amended scheduling order) was entered in January 15, 2013, five months after the deadline to amend
pleadings had passed.  Consequently, neither the third nor fourth (third amended) scheduling orders
addressed or extended the deadline to move to amend pleadings.

Meisner did not file a reply to Defendants' opposition memorandum and, consequently, presented no written opposition to Defendants' futility arguments.[9] She did, however, have a second opportunity to and apparently did address these arguments during a hearing on multiple motions held on November 6, 2013. *See* ECF No. 199 (Magistrate Judge's post-hearing order addressing inapplicability of the discovery rule).

The Magistrate Judge ruled on various matters during the November 6, 2013 hearing, but took the Motion to Amend under advisement. ECF No. 191 (minute entry). The Motion to Amend was subsequently denied by order entered November 21, 2013. ECF No. 199. The denial was based on a finding of futility in light of the applicable two-year statute of limitations. ECF No. 199 at 1 (noting allegations related to "actions that purportedly occurred over three years ago"). In reaching this conclusion, the Magistrate Judge rejected an argument that the discovery rule applied to the proposed slander and libel claims. *Id.* at 2.

Meisner sought reconsideration, arguing, in part, that the Magistrate Judge should have applied the discovery rule to accrual of the proposed slander and libel claims. ECF No. 205 at 1-2. Meisner also argued for tolling because the individual Defendant, Tracey Caldarazzo, was not located within the state during most of the statutory period. *Id.* at 3. Defendants opposed reconsideration noting that Meisner had failed to advance a proper basis for reconsideration. ECF No. 211. Meisner filed a reply, briefly listing the grounds for reconsideration and focusing on her tolling argument in asserting that she was advancing a proper ground for reconsideration. ECF No. 215 at 2 ("The Plaintiff is attacking the Defendants['] representation to the Court that the Statute of Limitations has run without informing the Court of Ms. Caldarazzo's out of State residency status which subjects her to the tolling provision of the Statute of Limitations[.]").

---

[9]  The deadline for filing a reply was November 4, 2013, two days prior to the hearing.

The Magistrate Judge denied Meisner's Motion to Reconsider by docket text order entered July 30, 2014, the same day the Report and Recommendation ("Report") on the cross-motions for summary judgment was entered. ECF No. 256. The docket text order denying the motion states only that the motion is denied.[10]

**Appeal.** Meisner appealed the denial of her Motion to Amend on August 13, 2014. ECF No. 260. As noted above, the court deems this appeal to also challenge denial of Meisner's Motion to Reconsider. The specifics of this appeal are addressed below.

## C.    Discussion

Through her appeal, Meisner primarily (if not solely) challenges the Magistrate Judge's determination that the discovery rule is inapplicable to the proposed claims for slander and libel because such claims are "actionable upon utterance." ECF No. 260 at 1 (characterizing Magistrate Judge's ruling). Meisner concedes that "[t]he Supreme Court of South Carolina has not addressed whether the discovery rule should apply to defamation actions hidden in the confines of an employment investigation[,]" but argues that Fourth Circuit authority supports application of the discovery rule in this context. *Id.* at 1 (citing *Austin v. Torrington Co.,* 810 F.2d 416 (4th Cir. 1987)).[11]

The Fourth Circuit decision Meisner cites does not address either a statute of limitations defense or the discovery rule. An underlying order of the district court, in contrast, addresses both issues and appears to be the decision to which Meisner refers. *See* ECF No. 273 at 6 n.4

---

[10]  The Report addresses the inapplicability of the discovery rule with respect to the slander claim pleaded in the amended complaint. ECF No. 257 at 26. While the bases of the claim in the amended complaint and the proposed slander and libel claims differ, the law is the same.

[11]  The Fourth Circuit's decision in *Austin* appears to have first been cited in Meisner's Motion to Reconsider. ECF No. 205 at 2.

(Defendants' opposition brief); ECF No. 276 (Meisner's reply); *Austin v. Torrington Co.*, 611 F. Supp. 191 (D.S.C.), *reversed on other grounds* 810 F.2d 416 (4th Cir. 1987).

While the district court in *Austin* held that the discovery rule applied to the particular claims before it, the court emphasized that the "exception is limited to the facts of this case and does not abrogate the date of utterance rule which applies in the traditional slander case." *Austin*, 611 F. Supp. at 195 (analogizing "surreptitious slander . . . to a false credit claim which injures, although unknown to the injured party[,]" which claims some courts have found justify application of a discovery rule). In referring to the facts of the case, the court appears to have found the following elements present: (1) fraudulent concealment of the defamatory statement by the party raising the statute; (2) failure of the innocent party to discover the facts which form the basis of her cause of action; and (3) due diligence by the innocent party. *See* 611 F. Supp. at 194 (discussing cases in which discovery rule was applied to fraudulently concealed defamatory statements).

In light of its reversal, albeit on other grounds, the district court's decision in *Austin* is of limited if any authority. It is, moreover, doubtful that the district court accurately predicted the direction of South Carolina law, given the absence of any subsequent South Carolina decision applying the discovery rule in similar circumstances in the nearly three decades since *Austin* was decided.[12] In any event, the facts of this case are distinguishable from those in *Austin* because

---

[12] The district court decision in *Austin* has been cited in only one subsequent state court decision, and was there introduced by a "*cf*" signal, indicating the case was cited for comparison. *See Jones v. City of Folly Beach*, 483 S.E.2d 770, 774-75 (S.C. App. 1997) (noting *Austin* "applied the discovery rule to an action for defamation but the ruling was limited to the facts of the case and [the court] stated its holding 'does not abrogate the date of utterance rule which applies in the traditional slander case'"). Two other decisions, both from the District of South Carolina, have cited the district court decision in *Austin*. One cited it for the continued vitality of the date-of-utterance rule. *See McBride v. WSPA/Media General, Inc.*, 2007 WL 1795835 *4 (D.S.C. 2007) (finding claim untimely under the date-of-utterance rule). The other cited it for the more general proposition that a two year limitations period runs "from the date [the claim] accrues." *Sunshine Sportswear & Elec., Inc. v. WSOC Television, Inc.*, 738 F. Supp. 1499 (D.S.C. 1989)

9

Meisner has been on notice of the allegedly slanderous statements, though not all facts necessary to support her claim, since she received a disciplinary letter in January of 2010.[13]

Meisner also refers to the "tolling provision for out of state Defendants" in her appeal. ECF No. 260 at 2. She does not, however, argue that the tolling provision applies because one of the Defendants is an individual who resided in another state during the relevant period. Instead, she argues that this statutory provision should be extended to apply "when 'notice of the tort' is unknown[.]" *Id.* In other words, Meisner would read the statutory tolling language relating to absent Defendants (which has nothing to do with the discovery rule) to require extension of the discovery rule to all causes of action. This interpretation is not supported by any legal authority or logical argument. The statutory provision addresses a specific basis for *tolling* a statute of limitations. The discovery rule is an *accrual* rule that is applicable only to certain categories of tort. There is no basis for reading one into the other.

Meisner also argues that to apply the statutory tolling "protection for some citizens that have been victims of a tort . . . and not to provide *the same sort of statutory protections* for other citizens when they do not know about the tort would be a violation of the Equal Protection Clause of the 14th [A]mendment of the United States Constitution." *Id.* (emphasis added). While stated in constitutional terms, this is simply another attempt to argue that the statutory tolling provision and discovery rule should be read together so that the discovery rule applies to all causes of action, most critically including claims for slander and libel. Again, this argument lacks logical or legal support.

---

[13] In her reply in support of her appeal, Meisner states that her relationship with Dr. Brandigi was referenced in her disciplinary letter dated January 22, 2010. While this letter may not have contained all details necessary to support the proposed amendments to her complaint, it at least put her on notice of the potential claim. Yet, Meisner waited more than two years to initiate this action and seek discovery concerning the basis of the concerns referenced in the disciplinary letter.

In contrast, many cases hold that South Carolina does not extend the discovery rule to claims for slander and libel, instead running the limitations period from the date of utterance. *See*, *e.g.*, ECF No. 273 at 5 (Defendants' opposition memorandum listing numerous cases so holding).

For all of these reasons, the court finds that the Magistrate Judge correctly applied the law in finding Meisner's proposed amendments futile because the proposed amended claims are time-barred. The orders entered as ECF Nos. 199 and 256 are, therefore, affirmed.

The court will, however, amend ECF No. 199 in one respect. That is, the court amends the Magistrate Judge's order to hold that Meisner's proposed amendments are futile due to application of the statute of limitations *even if the claims are treated as relating back to the filing of the original complaint*.[14] As Defendants note, the claims accrued when the utterance occurred, in January 2010, and the complaint was not filed until March 2012, more than two years later.

### D. Conclusion

For the reasons explained above, the orders denying Meisner's Motion to Amend and Motion to Reconsider are affirmed.

## II. DISPOSITIVE MOTIONS

### A. Standard of Review

With respect to dispositive motions, the Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Magistrate Judge's Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify,

---

[14] Plaintiff does not appear to have raised the relation-back argument. The court, nonetheless, considers the possibility that it could apply.

in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the

Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of an objection, the

court reviews the Report and Recommendation only for clear error. *See Diamond v. Colonial Life*

*& Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed

objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that

there is no clear error on the face of the record in order to accept the recommendation") (internal

citation omitted).

In light of Meisner's objection to all but one recommendation relating to the cross-motions

for summary judgment, the undersigned has conducted a *de novo* review of the entire Report and

Recommendation and has read all memoranda and exhibits filed in support of and opposition to the

cross-motions for summary judgment, as well as Meisner's subsequent objections and related

evidentiary submissions. *See supra* n. 4 (noting Meisner did not object to dismissal of any ADEA

claim that might be asserted).[15] Having fully considered both the evidence and arguments, the court

adopts the recommendations of the Report for reasons stated in the Report and as further addressed

below.

### B.    Disparate Treatment – Termination

#### 1.    No Direct Evidence of Gender Discrimination

The Report summarizes various comments and actions which Meisner maintains constitute

direct evidence that her termination was the result of gender discrimination, but concludes that none

of the cited evidence satisfies the relevant standard. ECF No. 257 at 7-10. The Report notes, in

---

[15] Any materials filed in support of Meisner's objections that were not timely submitted in support of or opposition to the cross-motions for summary judgment are arguably untimely. The court has, nonetheless, considered all evidentiary submissions as if timely filed.

particular, that isolated comments unconnected to the employment decision at issue do not constitute evidence of discriminatory animus necessary to a Title VII claim. *Id.* at 8-9.

Meisner objects to the Report's conclusion that she has not offered direct evidence of discrimination. In support of this objection, Meisner points to a handful of comments or actions, primarily by Jeff Fortino ("Fortino"), who was Meisner's supervisor from October 2009 until her termination in August 2010.[16] For example, Meisner points to a question Fortino asked her in October 2009: how she "ha[s] time to work with [four] boys." ECF No. 265 at 2, 13-14 (Objection).

Neither this nor any of Meisner's other cited comments or incidents are direct evidence that the later challenged events (*e.g.*, a January 20, 2010 disciplinary letter or August 2010 termination) were discriminatory because none meet the dual requirements that they "reflect directly the alleged discriminatory attitude and . . . bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (quoting *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (*en banc*). At most, Meisner has pointed to a few ambiguous comments or actions that she argues suggest gender bias, but which are equally consistent with non-discriminatory motives. This is not enough. *See, e.g.*, *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728 (4th Cir. 1996) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 549 (4th Cir.) ("isolated and ambiguous statements are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination"), *rev'd on other grounds*, 517 U.S. 308 (1996).

## 2.    Failure of Proof Under Burden-Shifting Framework

To the extent Meisner relies on the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to make out her claim of discriminatory termination, her claim fails

---

[16] Fortino had input into but was not the ultimate decisionmaker as to Meisner's termination. That decision was made in July 2010 and became effective in August 2010.

because ZymoGenetics has proffered a legitimate, nondiscriminatory reason for the termination and Meisner has failed to proffer evidence raising a reasonable inference that the stated reason for her termination was false. *See* ECF No. 257 at 10-16 (summarizing evidence relating to ZymoGenetics' nondiscriminatory reason for Meisner's termination and the absence of evidence that the proffered reason was false and recommending summary judgment be granted on this basis). Given this clear failure to demonstrate pretext, the court need not address whether Meisner has met her burden to establish a *prima facie* case.

**Stated Reason for Termination.** Shortly after she was advised of her termination, Meisner sent an email asking that she be given a written statement of the reason for the decision. ECF No. 277-1 at 2. The August 5, 2010 responsive email states as follows: "In summary, your termination of employment was based on a history of interpersonal conflict, most recently manifested by two of your top accounts no longer [being] willing to work with you." *Id.*

The record contains overwhelming and uncontroverted evidence that this stated reason was the true reason for Meisner's termination, including evidence that ZymoGenetics received multiple complaints from multiple sources about Meisner's behavior during 2009 and 2010. The nature and sources of these complaints are detailed in Defendants' opening memorandum in support of summary judgment. ECF No. 216-1 at 6-14 (memorandum listing complaints received from Meisner's co-workers, employees of Bayer, and key healthcare professionals at two of Meisner's five most important accounts); ECF No. 216-10 ¶¶ 7-9, 11-15 (Fortino declaration); *see also* ECF No. 239 at 17-19 (addressing, in reply, absence of evidence of pretext). The complaints included direct reports from representatives of key accounts who indicated that they were uncomfortable with or did not want to work with Meisner. ECF No. 216-10 ¶ 14 (Fortino declaration addressing his follow-up

14

inquiry with Joanie Wilson at Doctors Hospital); ECF No. 285-1 at 6 (Fortino contemporaneous email addressing conference call with Wilson during which Wilson "many times . . . mention[ed] that a relationship issue existed between [Meisner] and doctors (specifically Dr. Brandi[gi]) and Pharmacy Director[,]" and a subsequent unsolicited call from Wilson to Ted Rogers at ZymoGenetics advising that Meisner "was one of the main reasons inhibiting [Doctors Hospital from] mov[ing] forward with our product").[17]

**Meisner's proffered evidence of pretext.** In her objections, Meisner points to evidence she characterizes as direct and circumstantial evidence of pretext. Most critically as to circumstantial evidence, Meisner focuses on evidence that (1) at least one allegation of an inappropriate communication was falsely reported by a co-worker and (2) another was based on a physician's misunderstanding of something Meisner said to another physician. The evidence Meisner proffers on these points is insufficient to raise an inference of pretext for the reasons set forth below.

**Direct Evidence.** The evidence Meisner proffers as direct evidence of pretext fails for the same reasons noted above as to a direct evidence case. The comments and incidents relied on are simply too isolated, attenuated from the relevant decisions, and ambiguous to support an inference that the reason later given for Meisner's termination was false.

---

[17]  Meisner suggests that ZymoGenetics has given inconsistent reasons for her termination by characterizing the complaints from accounts as "refusing" to work with her when the complaints may have been more mildly stated, such as that the accounts were "uncomfortable" working with Meisner. This is a distinction without a difference given Meisner's role as a representative of ZymoGenetics, responsible for building positive relationships with the accounts. In any event, the semantic differences do not cast doubt on ZymoGenetics' stated reason for terminating Meisner: that it had received complaints about Meisner from multiple sources, including from key personnel at two of Meisner's most important accounts.

**False Report by Co-Worker**.  The court will assume without deciding that there is sufficient evidence to show that a report made by Meisner's co-worker, Tracey Caldarazzo, was false.[18]  The allegedly false report was that Dr. Brandigi called Caldarazzo in November 2008 complaining that Meisner had falsely accused Dr. Brandigi of having an affair with a nurse.  This report was apparently repeated to ZymoGenetics' human resources representative, Katie Carrigan, in January 2010 and may have been considered as one item in support of a reported pattern of questionable behavior mentioned in a January 22, 2010 disciplinary letter.  *See* ECF No. 216-16 (Declaration of Katie Carrigan attaching non-sequential bates-numbered documents ranging from Def 108-24 (handwritten notes of interviews of three employees)); ECF No. 280-1 at 2 (bates-numbered document DEF 000113 (handwritten notes that appear to report Carrigan's interview of Caldarazzo)).  Meisner has not, however, pointed to evidence that the individuals involved either in the investigation of a January 19, 2010 incident, the decision to issue a disciplinary letter as a result, or the later decision to terminate Meisner's employment were aware of the possible falsity of Caldarazzo's report.  Neither does the evidence raise a reasonable inference that Caldarazzo's

---

[18]  Meisner worked for ZymoGenetics as a surgical sales manager ("SSM").  This position entailed sales and marketing responsibilities for a specified territory or accounts, rather than management of other employees.  Caldarazzo was a medical science liaison ("MSL") who worked with the same accounts.  As MSL, Caldarazzo focused on educating physicians, pharmacists and other health care professionals on the science behind the marketed product, Recothrom.

In a document titled "Motion to Alter and Amend the Magistrate Judge's Findings and Facts pursuant to Rule 59-e FRCP," Meisner challenges, inter alia, the characterization of Caldarazzo as "the medical science liaison associated with Ms. Meisner's accounts."  ECF No. 275 at 2 (item no. 3) (noting that Meisner also worked with another MSL, Glenn Herbst, who was with a different entity, Bayer Healthcare Pharmaceuticals ("Bayer")).  The court treats ECF No. 275 as a supplemental objection and has considered the arguable incompleteness of the statement that Caldarazzo was the MSL, rather than one of the MSLs, with whom Meisner worked.  Even if the statement in the report is incomplete, it is not incorrect as the challenged statement is offered to explain Caldarazzo and Meisner's relative roles.

allegedly false report was a significant factor either in issuance of the disciplinary letter or Meisner's later termination, given the overwhelming evidence of other grounds for both decisions.[19]

**Dr. Brandigi's Reported View of Meisner.** Similarly, while Meisner believes Dr. Brandigi's reported view that Meisner was dishonest and disrespectful was based on a misunderstanding, she does not challenge the undisputed evidence that Dr. Brandigi, in fact, held and reported this opinion to ZymoGenetics. *See* Meisner dep. at 163-64 (testifying that Dr. Brandigi's complaint was based on a misunderstanding of statements Meisner made to another doctor but conceding that "[Dr.] Brandigi blew another gasket and called Valerie" Darling, who was then Meisner's supervisor, regarding this alleged statement). There is also uncontroverted evidence that, shortly after he became Meisner's supervisor in late 2009, Fortino learned that Dr. Brandigi had complained that Meisner was dishonest and disrespectful. ECF No. 216-10 ¶¶ 3, 8. In his deposition, Dr. Brandigi confirmed that he held and reported this view to ZymoGenetics. Brandigi dep. at 15-16, 56; *see also* Joanie Wilson decl. ¶ 7 (ECF No. 216-19) (stating that Dr. Brandigi reported to her that he believed Meisner lied to his friend and did not want to meet with Meisner because of this belief).[20]

---

[19] The January 22, 2010 disciplinary letter focused on events which occurred at a regional meeting on January 19, 2010. Specifically, it addressed comments Meisner made to a co-worker regarding the co-worker's religion and ethnicity and Meisner's "appearing to have over-consumed alcohol and being overly intoxicated" at the time. ECF No. 216-10 at 17-18. In one paragraph of the seven paragraph letter, it refers to "concern[] that the behaviors and conduct described . . . may be part of a pattern of issues and could be related to your performance" and gives, as examples "the situation with Dr. Brandig[i] and the perception held by some of your co-workers that you have the tendency to engage in discussions which are not productive or appropriate." *Id.* at 17.

[20] In her declaration, Meisner indicates that Dr. Brandigi's first complaint regarding this issue was received sometime soon after July 2008. Meisner Decl. ¶ 10 (ECF No. 228-8) (also suggesting source of misunderstanding could have been comment by Caldarazzo to a doctor who may have then passed it on to Dr. Brandigi's friend). The date suggested by Meisner is consistent with Fortino's claim that he was told of Dr. Brandigi's negative opinion of Meisner when he became her supervisor in October 2009.

**Adequacy of Investigation.**    Meisner focuses on whether she actually engaged in unprofessional conduct and the adequacy of ZymoGenetics' investigation into such complaints.  This focus misses the mark.  To demonstrate pretext, Meisner must establish that the legitimate reason given for her termination was not the true reason.  *E.g.*, *Holder v. Raleigh*, 867 F.2d 823, 829 (4th Cir. 1989) ("'A reason honestly described but poorly founded is not a pretext[.]'") (quoting *Pollard v. Rea Magnet Wire Co., Inc.*, 824 F.2d 557, 559 (7th Cir. 1987).  It does not matter that her employer may have erred in concluding that the reported problems existed or that Meisner was at fault in creating the problems.  *Id.*; *see also Pence v. Tenneco Auto. Operating Co.*, 169 Fed. App'x 808, 811 (4th Cir. 2006) (discrimination law "is not violated when an employer discharges an employee because of a mistaken perception of misconduct").

**Comparators.**    Meisner also argues that her comparator evidence raises an inference of pretext.  This argument is not well founded for reasons detailed in the Report and Defendants' response to Meisner's objections.   ECF No. 257 at 12-14 (Report); ECF No. 277 at 10-15 (Defendants' opposition memorandum).

**"Boys' Club" Atmosphere.**    Meisner's reliance on Eric Diello's testimony regarding a "boy's club" atmosphere at ZymoGenetics also fails to raise an inference of pretext.  Diello testified that he was referring to a situation where certain employees helped each other out, allowing some to advance based on friendship rather than professional abilities.  Diello dep. at 113-14.  Diello testified that he did not believe Fortino was part of this "club" and Diello had never observed Fortino treating people differently based on their gender or any other protected characteristic.  *Id.* at 113, 118.

**Other Circumstantial Evidence.**    Other "circumstantial evidence" addressed by Meisner is either based on speculative inferences or wholly unsupported.  *See*, *e.g.*, ECF No. 277 at 16-17

(Defendants' opposition to Meisner's objections, addressing the absence of evidence to support Meisner's argument that there was a pattern of terminating females because of their gender).[21]

### C.    Discriminatory Failure to Promote/Performance Appraisal

The Report recommends that Defendants' motion for summary judgment be granted as to Meisner's claim that she was denied promotions and given less favorable performance appraisals because of her gender.  Meisner objects to this recommendation.

The court finds Meisner's objection to this recommendation to be without merit for two reasons.  First, Meisner abandoned these claims by failing to address them in opposition to Defendants' motion for summary judgment.  *See* ECF No. 257 at 22 (Report).  Second, even if not abandoned, Meisner has failed to direct the court to evidence that would overcome the grounds on which ZymoGenetics argued for summary judgment including, as to some aspects of the claims, a failure to timely raise the claim or exhaust administrative remedies.  Meisner has, moreover, failed to point to any evidence that ZymoGenetics' stated reason for the timely raised (and administratively exhausted) nonpromotion claim (training position) was not its true reason:  that ZymoGenetics, in fact, believed that the person hired was the better qualified candidate.

---

[21]  In a post-objection filing, Meisner notes a misstatement in the Report regarding Valerie Darling's Termination Date.  ECF No. 275 at 2 (noting Darling was terminated in July 2009 rather than March 2009).  Meisner asserts this error is important because Darling was the only female sales manager and was terminated by the same decisionmaker as was Meisner, thus, presumably, suggesting this is some evidence of an anti-female bias.  Meisner has not, however, presented sufficient evidence regarding the circumstances of Darling's termination for any such inference to be raised.  *See*, *e.g.*, ECF No. 277 at 17 (Defendants' opposition memorandum addressing the absence of such evidence); Meisner dep. at 112, 117-18 (conceding she had no knowledge of the reasons for Darling's termination other than that there was a downsizing at the time); *see also* Diello dep. at 55 (stating his understanding of why Darling left as a "struggle to communicate well and work together well" with Owens, as well as "low sales in her region").

Further, as to her allegation that her performance review was discriminatory, Meisner asserts that a reference in her performance review to "'inappropriate conversations with' Dr. Brandigi" is "an obvious reference to Ms. Caldarazzo's slander[]" and that the very limited time Fortino had been Meisner's supervisor somehow suggests discriminatory motivation.  ECF No. 265 at 28 (objection). The actual reference in the December 2009 review is more generic, as it refers simply to "Physician Relationship issues."  Even assuming this generic comment refers specifically to Meisner's difficulties with Dr. Brandigi, there is no reason to link it to Caldarazzo's allegedly false report. Further, even if there was such a link, there is no reason to believe Fortino was aware that the report was false or to link the alleged falsity (or his short tenure as Meisner's supervisor) to a gender-based discriminatory motivation.

Meisner has, moreover, attributed the generic "physician relationship" comment in this December 2009 review and the reference to Dr. Brandigi in the January 2010 disciplinary letter to other motives including, most critically, that they were in retaliation for Meisner's far earlier complaints about Dr. Brandigi, rather than to Dr. Brandigi's complaints about Meisner.  ECF No. 265 at 28-29 (relying on this motivation in support of her retaliation claim).  Fortino's declaration, in contrast, avers he learned in October of 2009 that Dr. Brandigi viewed Meisner as dishonest and disrespectful.  ECF No. 216-10 ¶ 8.

Fortino's claimed motivation is, at the least, more consistent with the other evidence than Meisner's speculative and multiple claims of some other, more nefarious (though not necessarily discriminatory) motivation.  Moreover, Meisner herself averred that she had not called on Dr. Brandigi for a substantial period of time before Fortino became her supervisor, a circumstance reasonably suggesting to her supervisor that there were "relationship issues" between Meisner and at least one important contact at one of her most important accounts.  ECF No. 228-8 ¶ 3 (Meisner's

20

declaration).  She also testified that, during her first conversation with Fortino, he brought up that he understood, apparently from Caldarazzo, that there were relationship issues between Meisner and Dr. Brandigi.  Meisner dep. at 247-48.  Meisner further testified that Fortino stated that he intended to "work to mend that fence[,]" though, in Meisner's view, he never took such action.  *Id.*  This testimony is consistent with Fortino's claim that, in October 2009, he learned that Dr Brandigi "had complained that Ms. Meisner had been dishonest and disrespectful," and that this, combined with complaints from Bayer, was the basis for his comment in and relating to the review that Meisner "needed to improve on building relationships[,]" and "needed to use better judgment in communicating with her peers and with potential customers."  Fortino decl. ¶ 10.

### D.     Religious Discrimination

The Report recommends summary judgment be granted in favor of Defendants on Meisner's claim for religious discrimination.  Meisner objects to this recommendation.

The court adopts the Report's recommendation over Meisner's objection for multiple reasons including but not limited to the following: (1) the reprimand on which this claim is based was not an adverse employment action; and (2) no similarly situated employee outside of Meisner's protected class (Christian) was treated differently under similar circumstances (where the discipline was based on the employee being "overly intoxicated" at a company event and making ethnically or religiously disparaging comments to co-worker).  To the extent Meisner now attempts to recast her claim as one of failure to accommodate, her recharacterization of the claim comes too late and, in any event, lacks evidentiary support.  *See* ECF No. 265 at 23-24 (Meisner's objection); ECF No. 277 at 26 (Defendants' opposition).

### E.     Hostile Environment

Meisner objects to the recommendation that summary judgment be granted on her hostile environment claim. Her arguments fail to persuade the court that there is any error in the Report relating to this claim. Meisner may have experienced some corrections from her supervisors that she felt were unwarranted and some conflict with co-workers that made her uncomfortable. There is, however, no evidence that either difficulty was because of a protected characteristic. Neither is there evidence that the difficulties were sufficiently severe or pervasive to support a hostile environment claim.

### F.     Retaliation

Meisner objects to the recommendation that summary judgment be granted on her retaliation claim. This objection is not well founded.

The prior complaint on which Meisner relies for this claim was relayed to Caldarazzo and Darling in November 2007. Meisner dep. at 153 (noting concern was raised because of behavior of Dr. Brandigi and another physician). The complaint related to Meisner's concerns that female representatives should not call on physicians associated with the Burn Unit alone. The concern was addressed to Meisner's satisfaction at that time, with instructions to call on this unit as a group. *Id.* at 160.

For purposes of this order, the court accepts Meisner's claim that she reported this complaint to Fortino soon after he became her supervisor in October 2009. ECF No. 228-8 ¶ 3. There is, however, no evidence of a causative link either between the complaint itself (in 2007) or Fortino's receipt of information about the complaint (in October 2009) and Meisner's later termination (in August 2010). The only suggested connection is temporal and the time gaps (several years between

22

complaint and termination and over seven months between Fortino's receipt of information and termination) are too great to raise an inference of causation based on temporal proximity.

No other plausible evidence of causation is suggested. As discussed above with respect to Meisner's claim based on her performance review, Meisner has attributed at least two possible motivations to the references to "Physician relationship issues" in her December 2009 performance appraisal and a "situation with Dr. Brandig[i]" in her January 2010 disciplinary letter: first, that the comments refer to a false report by Caldarazzo; and second, that the comments refer to Meisner's complaint about Dr. Brandigi. In contrast to these two possible motives (only one of which would support a retaliation claim), Defendants have presented evidence that Fortino had received information that Dr. Brandigi believed Meisner was dishonest and disrespectful, a report consistent with Dr. Brandigi's own testimony.

In any event, for the same reasons addressed above as to the gender discrimination claim, there is no evidence that the reason stated for Meisner's termination, her "history of interpersonal conflict, most recently manifested by two of [Meisner's] top accounts no longer being willing to work with [her,]" was not the true reason. *See supra* § II.B.; Brandigi dep. at 56; Meisner dep at 163-64, 167; Meisner dep. at 293-94 (ECF No. 277, Ex. F) (conceding that Dr. Brandigi continued to complain about her up to the time of her termination. ).

### G.    Slander Claim

Meisner's objection to the recommendation that Defendants' motion for summary judgment be granted as to her slander claim is without merit. The claim is time-barred for reasons addressed in the Report.

**H.      SCPWA Claim**

Meisner's objection to the recommendation that her motion for summary judgment be denied and Defendants' motion be granted as to her claim under the South Carolina Payment of Wages Act is without merit for reasons addressed in the Report. Quite simply, Meisner was not entitled to the claimed sums under the clear terms of the long-standing written policy governing this aspect of her pay.

**I.      Age-Based Claim**

Meisner has not objected to the recommended grant of summary judgment on any age-based discrimination claim that may be suggested by her allegations. The court, therefore, adopts this recommendation for the reasons set forth in the Report. The court would, moreover, reach the same conclusion under the *de novo* standard of review as Meisner has presented no evidence of any age-based motivation for her termination.

**J.      Additional Claims**

The court adopts the Report's recommendation that the court not consider any claims raised for the first time in opposition to summary judgment.

**CONCLUSION**

For the reasons set forth above, the court affirms the Magistrate Judge's orders denying Meisner's Motion to Amend and Motion to Reconsider. ECF Nos.199, 256. The court adopts the Report and Recommendation in full as supplemented by this order, ECF No. 257, and rules as follows on the various pending motions:

(1)      The orders denying Meisner's motions to amend the complaint (ECF No. 199) and reconsider that denial (ECF No. 256), challenged by Meisner's appeal (ECF No. 260), are affirmed;

24

(2)    Meisner's motion for summary judgment (ECF No. 134) is denied;

(3)    Defendants' motion for summary judgment (ECF No. 216) is granted;

(4)    Meisner's motion to amend the docket text order entered as ECF No. 269 (ECF No. 275) is deemed a supplemental objection  and is considered as such;

(5)    Meisner's motion for leave to file a reply in support of her appeal ( ECF No. 276) is granted and the attached memorandum is considered;

(6)    Meisner's motion to amend or correct her sur reply in opposition to Defendants' motion for summary judgment (ECF No. 252) is also granted and the attachment is considered; and

(7)    Meisner's earlier motions in limine (ECF Nos. 204, 219) are terminated as moot in light of the summary judgment rulings.

IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
September 22, 2014